YOUNG P. DAWKINS *v.* R. BENNETT DARNALL
ET AL., EXECUTORS
[No. 86, October Term, 1936.]

*Decided January 14th, 1937.*

The cause was argued before OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Roland J. Christy,* for the appellant.

*Arthur W. Machen,* with whom were *Alexander Gordon, 3rd,* and *Armstrong, Machen & Allen,* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Walter I. Dawkins, lately a judge of the Supreme Bench of Baltimore City, died unmarried and without issue, but testate, in that city on February 10th, 1936. His will was in due course admitted to probate in the Orphans' Court of Baltimore City, and letters testamentary upon the estate issued to R. Bennett Darnall and Charles F. Yaeger, who are also under the will trustees of his residuary estate. His nearest relatives living at his death were, in the order of their seniority, Frances A. Dawkins, Young P. Dawkins, and Mary Dawkins Michael, all children of a deceased brother.

The twenty-eighth clause of his will reads: "I would like those of my nearest (in order of Seniority) living

relatives to have the choice of any personal articles belonging to me at the most nominal appraisement. It is impossible to specify gifts to different ones however much I would desire the same to be cherished by them."

Young P. Dawkins, the nephew, construed the words "personal articles," as used in that clause, as including the furnishings in the testator's apartment, his books, pictures, engravings, linen, china, plate, coin and stamp collections, and similar chattels, and the words "most nominal appraisement" as meaning a consideration with no relation to the value of the chattels selected under the clause, but a consideration in name only, a mere trifling inconsiderable sum. The executors were not only unwilling to accept that construction of the clause, but were also in doubt as to the extent of the selective option given by the clause to the relatives to whom it applied. Accordingly, they filed the bill in this case against Young P. Dawkins, setting out in substance these facts, and in which they prayed.

"(1) That a decree may be passed determining what portions, if any, of the tangible personal property set forth in the inventory of personal estate are covered by said designation of 'personal articles.'

"(2) That a decree may be passed determining how said paragraph of the will should be carried out by the Executors, and what the right of the nearest of kin thereunder are.

"(3) That a decree may be passed determining what is meant by the phrase 'most nominal appraisement' in said paragraph 28 of the will.

"(4) That a decree may be passed determining how the order of choice by the Testator's nearest relatives should be adjusted, and whether the senior of such nearest relatives is entitled to take the whole of said personal articles, and, if so, at what price, and similarly as to the next in order of seniority of the said relatives, if any of such personal articles are not taken by the eldest of the said three nearest relatives.

"(5) That your Orators may have such other and fur-

ther relief as the nature of the case may require and to your Honors may seem meet."

The defendant answered, admitted the facts, and joined in the prayer of the bill. There was filed with the bill an inventory showing the estate to have an appraised value of $117,654.07, and a copy of the will. Testimony was taken which furnished formal proof of the facts recited *supra,* and at the close of the case the court decreed: (1) "That by the true construction of the Last Will and Testament of Walter I. Dawkins, Deceased, the phrase 'any personal articles belonging to me' in the 28th numbered paragraph of said will does not refer to tangible personal property generally, but is to be confined to articles worn or habitually and intimately used by the Testator, such as his gold fraternity pin, his Masonic pin, or family heirlooms, and that the expression 'most nominal appraisement' in said clause must be deemed and taken to refer to the official appraisement by the appraisers appointed by the Orphans Court as set forth in the inventory or inventories, that being the only official appraisement made." And (2) "that the Defendant Frances A. Dawkins shall have the right to select one article or one set of articles out of the 'personal articles' as hereinabove defined, and to take the same upon payment to the Executors of the appraised value thereof as shown by the inventory, and that then the Defendant Young P. Dawkins shall have the right to select one article or one set of articles out of the remaining 'personal articles' as hereinabove defined, and to take the same upon payment to the Executors of the appraised value thereof as shown by the inventory, and that thereafter the Defendant Mary Dawkins Michael shall have the right to select one article or one set of articles out of the remaining 'personal articles' as hereinabove defined, and to take the same upon payment to the Executors of the appraised value thereof as shown by the inventory; provided that nothing herein contained shall prevent the Executors in the exercise of their discretion from selling any other personal articles or chattels to the Defendants

at the appraised value thereof as set forth in the inventory, or as may be authorized by the Orphans' Court of Baltimore City," and that the cause be retained (a) to carry out the decree, and (b) to determine any other question arising out of the administration of the estate requiring the determination of a court of equity. The appeal is from that decree.

It is manifest from the whole tenor of the will that when Judge Dawkins spoke of "personal articles" he meant such articles as suggested a close intimate relation with him as an individual, which were associated with his presence, and which were used by him about his person for bodily comfort, convenience, or adornment (*Mathis v. Causey*, 172 Ga. 868, 159 S. E. 240, Words and Phrases), rather than chattels indiscriminately. For, as stated by the chancellor in his clear and wisely reasoned opinion, it is not "reasonable to suppose the Judge wished to give (or sell at the most nominal appraisement) pots and pans, rugs which disappear with use, Balzac's Works, or the Maryland Reports, or a bag full of coins, for example, to his nieces and nephew as appropriate articles 'to be cherished by them.' On the other hand it is clear that the Judge had no idea of enriching his nearest relatives, had no business or economic considerations in mind when he wrote the paragraph quoted. Sentiment controlled him. He, the aged affectionate Uncle, simply meant to provide each of his 'nearest living relatives' with some keepsake, an article or set of articles, not used in cooking, in professional work or which perished with use, which were more personal in a corporal sense to him than a general library, a law library, household furniture or a coin collection, 'to be cherished by them' as a token and memento to each to recall his memory in years to come."

When the testator announced that he wished his nearest living relatives to have "the choice," "in order of seniority," of any personal articles belonging to him, it must be assumed that he intended each of them to have such a choice, not that he meant to confer upon one the right to exclude the others. The impersonal method of

conferring the option indicated that he wished to classify them upon some basis other than that of partiality or preference. It is also apparent that he granted the privilege, not for commercial enrichment, but as an evidence of personal affection. When therefore he gave them "the choice," he neither gave nor intended to give them a series or succession of choices, but a single opportunity of selecting some article or some associated group of articles which, because of their intimate association with his person, would continue to remind them of him after his death. The appraised value of the chattels amounted to $9,661.50. It cannot be assumed that an experienced lawyer and judge would deliberately adopt so vague and indefinite a plan of disposing of so large a part of his estate as that the three named relatives should be given the right by a series of choices to exhaust that part of his estate. In support of a different construction, however, it is suggested that he wanted to treat the three equally, and that "the choice" is not limited to a single article, but that there is no limit to it. Both contentions cannot be sound, for if there is no limit to the number of articles which the three may choose, the oldest by choosing all the articles could deprive the other two of any choice. For, as stated by the chancellor, "Otherwise by continued selections, in rotating order, they might if greedy take everything, and perhaps defeat payment of the cash legacies in full; certainly deplete the residuary estate."

However, whether the privilege of selection given the three named relatives is limited to chattels of a certain character, or as to the number of chattels which the donees may select, is of little relative importance, if they are after all required to pay the actual value of the articles selected. Whether they are or are not depends upon the meaning given the expression "most nominal appraisement." If it means that they are to pay the full or actual value of such articles, the privilege loses much of its significance as an evidence of the testator's affection for the donees, for except for a priority of selection, it would be much the same privilege which any one desiring to

purchase the estate's property might have. The term "most nominal appraisement" is unusual, has no technical meaning, and is somewhat ambiguous. The testator undoubtedly knew that "appraisement" in probate law meant the valuation of the property at its actual worth. *Bouvier's Law Dictionary; Oxford Dictionary.* He must have attached some meaning to the words "most nominal," or he would not have used them. "Nominal" is ordinarily used to describe a consideration which has no relation to reality but exists in name only, and "most nominal" would ordinarily be taken as meaning the least possible consideration. It seems reasonable to assume that where the testator used the word "appraisement" in that expression he used it in the sense of valuation rather than in the sense usually given it in probate law, and that when he qualified it by the words "most nominal" he intended it not only to mean something less than an official appraisement, but the least possible valuation. The appraisement or valuation which he had in mind was not for the purpose of the particular gift. He intended to confer a benefit, and to confer it as an evidence of affection, but that intention is inconsistent with a purpose of requiring the donees to pay full value for the benefit. He could of course have actually fixed the consideration at some specific amount, and obviated all possible controversy, but on the other hand, if he had intended the expression to mean the value which official appraisers would place upon the chattels, he could have said "official appraisement," or merely "appraised value." But when he said "most nominal" appraisement, the conclusion seems inevitable that he meant an appraisement which would be as much less than an official appraisement as possible. It is apparent that he intended that the donees should pay something at least for the articles selected, and he must have known that the only appraisement known to the orphans' courts of this state is the official appraisement. He must therefore have intended his executors to have the power of fixing the "appraisement" at such a sum as in their discretion would be deemed appropriate

and just. We are unable therefore to agree with the construction placed by the decree on that expression, but in our opinion it was intended to mean only such a sum as in law would constitute a consideration, and in the discretion of the executors be deemed appropriate and just, but which need have no relation to the actual worth of the chattels selected. It follows therefore that so much of the decree as construes the expressions "personal articles" and "my nearest (in order of Seniority) living relatives to have the choice" must be affirmed, and so much of it as construes the words "most nominal appraisement" as meaning the official appraisement of the Orphans' Court, must be reversed.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings, the costs in this court to be paid in equal parts by the parties to this appeal.*